(No. 46379.—

LORETTA MISHKA DERTZ, Appellant, v. ELEANORA WAGNER PASQUINA *et al.*—(Eleanora Wagner Pasquina, Appellee.)

*Opinion filed Sept. 27, 1974.—Rehearing denied Nov. 26, 1974.*

James A. Dooley, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman and Michael K. Murtaugh, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

This case originated in the circuit court of Cook County where the plaintiff was awarded damages of $90,000 against defendant Pasquina on a jury verdict as to damages only, the trial judge having directed a verdict as to the liability of defendant Pasquina, and a verdict in favor of the other defendants. The appellate court (15 Ill. App. 3d 470) reversed and remanded the cause. We allowed appellant Dertz's leave to appeal.

The plaintiff received serious injuries when the automobile in which she was a passenger, while traveling at a speed of about 30 m.p.h., failed to complete a sharp left turn, and went into a ditch and stopped only upon hitting a large rock.

The automobile was owned by defendant Helen Migon, d/b/a Cedar Lodge. The remaining defendants were sued individually and d/b/a Cedar Lodge. Helen Migon testified that she gave no instructions to defendant Pasquina concerning the shimmy of the wheels of the car prior to allowing her to drive the car, and that she

instructed Pasquina how to use the manual choke and told her to be careful and not speed. The plaintiff and three female companions were paying guests at Cedar Lodge and were given the use of the 1954 automobile for the purpose of going to mass on Sunday morning. Defendant Pasquina and three other girls rode in the car in question from the bus station at Butternut to the lodge and traveled over the road where the accident occurred. They laughed and joked about how the car shook and rattled.

There was testimony that the automobile had recently been taken into a local shop for repairs, and that Helen Migon stated that the car wheels shimmied when driven over 40 m.p.h., and that she was not satisfied with the repair work which had been done on the car. The cause of complaint was that the front wheels of the automobile would shimmy when driven at a speed of more than 40 m.p.h. over the local "washboard" roads. The accident occurred on one such "washboard" road. Defendant Pasquina was driving at a speed of 40 to 45 m.p.h. when the car was about 600 feet from a sharp left turn. She had passed a sign warning of the turn and then took her foot off of the accelerator in order to reduce the speed which the car was traveling. When she came to the turn she attempted to turn the steering wheel to the left but the car did not respond. It was then that she applied the brakes and the car left the road and went straight ahead into the ditch after leaving skid marks for about 40 feet.

The trial judge directed the verdict against defendant Pasquina on the theory that the evidence established that the accident was caused solely by her failure to negotiate the curve while traveling at too great a speed, and that the evidence would not support a finding that the plaintiff had been contributorily negligent. The court directed a verdict in favor of the remaining codefendants on the theory that the evidence did not support a conclusion that the condition of the automobile played any part in the accident.

The appellate court did not agree with either conclusion, and held that although the trial court applied Wisconsin substantive law in the case, that Illinois law governed the procedural question, including the standard to be used in determining whether the motion for a directed verdict should have been allowed. Stated in terms of our decision in *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, the appellate court could not agree with the trial court that all of the evidence when viewed in its aspect most favorable to the respective opponents, so overwhelmingly favored the movant that no contrary verdict based on that evidence could ever stand.

Defendant Pasquina argues that the question of comparison of negligence under the Wisconsin law is peculiarly within the province of the jury. (*Niedbalski v. Cuchna* (1961), 13 Wis. 2d 308, 108 N.W.2d 576.) However, defendant Pasquina has failed to note that *Niedbalski* and other cases cited by her recognize that each case turns on its own facts, and that a jury finding can be reversed by the court if necessary. We deem our test enunciated in *Pedrick* to provide adequate protection from a directed verdict, and that it is proper for the trial judge to direct a verdict, even as to comparison of negligence, if the evidence so requires.

The question then becomes whether the directed verdicts were proper under the *Pedrick* rule. Defendant Pasquina alleges the existence of several questions of fact which she believes should have been submitted to the jury. First, she alleges that there was a question of fact as to whether the plaintiff was contributorily negligent. We do not so find from the record.

It must be kept in mind from the outset that what we are concerned with in this case is causal negligence, and that the case involves findings as to at least two groups of interested parties. First, the interest of the plaintiff as to each defendant, and second, the interests of the respective defendants among themselves.

In *McConville v. State Farm Mutual Automobile Insurance Co.* (1962), 15 Wis. 2d 374, 113 N.W.2d 14, the Wisconsin Supreme Court enunciated a basic change in that State's law as to automobile guests. The court said:

"*** (1) The driver of an automobile owes his guest the same duty of ordinary care that he owes to others; (2) A guest's assumption of risk, heretofore implied from his willingness to proceed in the face of a known hazard is no longer a defense separate from contributory negligence; (3) If a guest's exposure of himself to a particular hazard be unreasonable and a failure to exercise ordinary care for his own safety, such conduct is negligence, and is subject to the comparative-negligence statute." (15 Wis. 2d 374, 378, 113 N.W.2d 14, 16-17.)

Defendant Pasquina then argues that, on the basis of earlier cases which were involved with the doctrine of assumption of risk, the plaintiff was contributorily negligent. She cites *Cleary v. Eckart* (1926), 191 Wis. 114, 210 N.W. 267, where it was held that assumption of risk applied if one rides with a driver the person knows to be inexperienced; *Poneitowcki v. Harres* (1929), 200 Wis. 504, 228 N.W. 126, where the court held that the guest assumes all nonlatent defects; and *Sommerfield v. Flury* (1929), 198 Wis. 163, 223 N.W. 408, where the court held that a guest entering into an automobile takes it with the defects not known to the host.

Defendant Pasquina claims that the plaintiff was contributorily negligent for failing to keep a proper lookout, and cites *Vandenack v. Crosby* (1957), 275 Wis. 421, 82 N.W.2d 307. The basis for this allegation is the plaintiff's testimony that at the time of the accident she, the plaintiff, was seated in the front seat but was facing the rear seat. It strains credulity to say that a plaintiff may not turn her head from the front to engage in conversation with persons riding in the back seat without being deemed

contributorily negligent in causing an accident.

Defendant Pasquina also claims that the plaintiff was contributorily negligent in that she allegedly proceeded in the face of known dangers. Two separate bases of danger are alleged. One is that the plaintiff knew Pasquina to be an inexperienced driver, and the other is that the plaintiff knew that the automobile was defective. The evidence that Pasquina was an inexperienced driver is the testimony that she had trouble starting the car, and received instructions on how to operate a manual transmission and choke, that she had previously only driven in large cities, and had no experience driving on the rough back roads of Wisconsin. We fail to see how these allegations, if true, could be deemed to be causal. The various parties allege that Pasquina was either driving too fast, or that the steering mechanism failed to function properly. If defendant Pasquina's argument would control here, we would be in the impossible position of saying that city drivers are not qualified to drive in the country, and vice versa. The test should be one of general driving competence, and should not turn upon the nice distinctions urged by defendant Pasquina. Likewise, we fail to see how the fact that the car had a manual transmission and choke had any causal relation to the accident, because a car with a manual transmission and choke brakes the same as one with an automatic transmission.

A more serious allegation is that the plaintiff willingly accepted a ride in a vehicle she knew to be unsafe. It is undisputed that Helen Migon, while driving the guests to the lodge, commented that the wheels of the car shimmied and that she was dissatisfied with the repairs made and was going to return the car to the shop for more repair work. The fact that the wheels of the car shimmied does not appear to be of major importance unless such circumstance precluded the driver of the car from turning the car by use of the steering wheel.

The man who had repaired the car testified that the

shimmy in the wheels would not affect the ability of the car to turn; that he had balanced the front wheels of the car, and that an imbalance in the wheels could cause a shimmy in the steering mechanism; that this would not be unusual in a 1954 Ford; and that a shimmy in the steering mechanism would not affect the car's brakes, or its ability to turn. He further testified that one month after the accident he examined the unrepaired car and found the brakes still intact and operative, but that the steering mechanism had been bent in the crash, although all of its parts were still together.

In order to affect the plaintiff's right to recover a judgment against defendant Pasquina, it must be shown that the plaintiff should have known that the shimmy of the wheels would adversely affect the steering mechanism of the car in such a manner as to make riding in the car dangerous. The record does not indicate such circumstance. Leaving aside at this point the question of whether or not the shimmy in the wheels did cause the accident, it cannot be said that the plaintiff should have expected the steering to fail because the wheels of the car shimmied. The fact of whether or not the shimmy in the wheels caused the accident is relevant to the question of the liability of the other defendants and the problems concerning contribution which that finding would create.

Therefore, inasmuch as the plaintiff was not contributorily negligent, and defendant Pasquina was negligent in that she was driving at an excessive rate of speed, it was proper for the court to direct a verdict for the plaintiff and against defendant Pasquina. It must then be determined what rights defendant Pasquina and the plaintiff have against the other defendants.

Under Wisconsin law, the plaintiff can recover all of her damages from any one of several joint tortfeasors. Therefore, the plaintiff could properly recover the entire amount of her damages from defendant Pasquina. (*Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N.W.2d 105.) The

court in *Bielski* stated:

> "The problem of contribution is the sharing
> or distributing of the loss on equitable principles
> between joint tort-feasors having a common
> liability to the injured party when one of the
> tort-feasors has borne an unjust proportion of the
> common burden. \*\*\*
>
> The doctrine of contribution is an equitable
> doctrine based on natural justice and well recog-
> nized in suretyship and other areas of the law
> before it was adapted to negligence. \*\*\* Natural-
> ly, the pro rata share concept, being part and
> parcel of the doctrine, was used when the
> doctrine was applied in the field of negligence."
> 16 Wis. 2d 1, 7, 114 N.W.2d 105, 108.

We next consider the propriety of the directed verdict
in favor of all of the other defendants in the context of the
relationship of that directed verdict to defendant Pas-
quina's possible right of contribution from them.

The question is whether or not the shimmy in the
wheels, or the steering defect, if any, which might have
been caused by the shimmy, in fact was the cause of the
accident. In effect, defendant Pasquina is arguing that she
should have the right to try both the comparison-of-negli-
gence issue as between herself and the plaintiff, and also
the question of comparison of negligence for contribution
purposes between the defendants and the plaintiff. *Bielski*
makes clear that in suits involving multiple defendants, it
must be determined whether or not the plaintiff was
contributorily negligent and, if so, to what extent, and
whether or not each defendant was negligent; and the
various percentages of causal negligence must be assigned
to all of those parties who were found to be negligent.

The appellate court held that defendant Pasquina has
a genuine interest in the resolution of plaintiff's claim
against her codefendants, and has standing to appeal from
the directed verdict in their favor in order to protect her

right of contribution. We need not decide this question because what she overlooks is that by the process of contesting the degree of negligence attributed to her, which was 100%, she has and is now in fact indirectly, but actually, litigating her right to contribution from the other defendants. If the percentage of negligence attributable to her should be lowered, and the plaintiff's percentage left at zero, it would be necessary to adjust that amount of negligence not then attributed to either defendant Pasquina or the plaintiff to some other person or persons in this case—the remaining defendants.

There are not sufficient allegations of fact and sufficient proof to require a submission to the jury of the degree of causation due to any defect in the steering mechanism of the car. The car had been driven some miles before the accident, and the mechanism had clearly been in usable operating condition, even though there is testimony that no sharp curves were in that portion of the road on which it had been driven. There was testimony by the mechanic who repaired the car as hereinbefore set forth. It is apparent that if the car indeed failed to respond when the steering wheel was turned to the left, it was because it was being driven at too high a rate of speed over a bumpy road. The directed verdict in favor of the other defendants was proper.

Defendant Pasquina also argues that the award of $90,000 in damages was excessive and must be reduced. The basis for the argument is her claim that the special damages could not have amounted to more than $14,179.10, and that therefore more than 80% of the award was based on intangibles. She includes in the classification of intangibles possible future loss of earnings, pain and suffering, the nature, extent and duration of the injury, the disability, and disfigurement resulting from the injury. While it is true that intangibles are, by their nature, hard to evaluate as to amount, it must be remembered that the prospective life-span of the plaintiff is probably the

single most important factor in the determination of the amount to be awarded for intangibles. At the time of the accident the plaintiff was 21 years of age. She was 28 at the time of the trial, and at that time had a life expectancy of 48 years. This means that she was awarded approximately $1500 a year on the basis of her life expectancy. In view of the serious disfigurement caused by her injuries, we cannot say that the verdict must be set aside as being excessive.

The remaining argument of defendant Pasquina can be readily answered. She claims that the jury was wrongfully asked on *voir dire* whether or not they had any connection with any of the insurance companies which had an interest in the case. We need not decide this point because of our holding that the damages were not excessive and that the directed verdicts were properly given. This holding makes any question of jury prejudice moot.

Lastly, the question remains as to whether the defendant was prejudiced when a statement was introduced to the effect that defendant Pasquina offered to pay for the damages. While we agree that evidence of a *bona fide* offer to compromise would not be admissible, the statement here was made in the hospital to one of the lodge owners on the afternoon of the accident, without any advice as to liability from an outside source, be it counsel or someone else, and was no more than an expression of regret for damages done to someone else's car.

Inasmuch as we find that the directed verdicts were proper; that they were not influenced by improper testimony, and that the award is not excessive, the judgment of the appellate court is reversed, and that of the circuit court reinstated.

*Appellate court reversed;*
*circuit court affirmed.*