SYLVESTER G. BLAKE, Pláintiff-Appellant, *v.* ALFRED M. DICKINSON, d/b/a DICKENS SUPER 100 and also d/b/a CLARK SERVICE STATION, *et al.*, Defendants-Appellees.

(No. 59848; )

First District (3rd Division)—July 3, 1975.

Harold N. Solomon, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

W. R. Tribler, of Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

On February 10, 1968, plaintiff, Sylvester Blake fell and was injured while purchasing gas and cigarettes at "Al Dickens Super 100" gas station located at 437 E. 39th Street in Chicago, Illinois. In his complaint plaintiff alleged, *inter alia*, that he was a business invitee who was injured when he slipped on ice covered with oil that had been allowed to form on defendants' premises due to defendants' negligence. Plaintiff brought suit against both the service station lessee-operator, Dickinson, and the oil company lessor, Clark Oil & Refining Corporation (hereinafter referred to as Clark). The jury returned a verdict of $15,000 in favor of plaintiff as to defendant Dickinson and a verdict against plaintiff as to defendant Clark. Subsequently, both plaintiff Blake and defendant Dickinson filed post-trial motions for judgments *n.o.v.* or in the alternative for new trials. In response to Dickinson's motion, the trial court ordered that judgment *n.o.v.* be entered in favor of Dickinson. The trial court further ordered that Blake's post-trial motion for judgment *n.o.v.* against Clark or in the alternative for a new trial be denied.

Plaintiff now appeals from the above orders of the trial court.

On appeal, plaintiff makes the following two contentions: (1) that there was sufficient evidence to support the jury's finding of negligence on the part of the lessee-operator, Dickinson, and (2) that the lessor, Clark, retained strict control over the maintenance and operation of the leased premises and therefore the jury verdict in favor of Clark was against the manifest weight of the evidence.

We reverse in part, affirm in part and remand with directions.

The testimony adduced at trial concerning the condition of the premises (at 437 E. 39th Street) and the circumstances of plaintiff's fall is conflicting. Plaintiff testified that on February 10, 1968, he drove into the Clark Service Station located at 437 E. 39th Street to purchase gas and oil. After his vehicle was filled with gas, plaintiff remembered that he wanted to buy some cigarettes. Plaintiff further testified that as he was walking toward the gas station office to pay for the cigarettes, he slipped backwards on a patch of ice covered with oil, injuring his left

knee. Plaintiff described the patch of ice as 2 or more feet long, a foot to a foot and a half wide, and between one-quarter and one-half inch thick. According to the plaintiff, there was a dirty color of oil on top of the ice and the ice was almost the same color as the ground. Plaintiff further indicated that it was freezing on the day in question and for several days prior thereto.

Plaintiff also testified that shortly after his fall, defendant Dickinson came over to him while he was still lying on the ground, and that at that time he told Dickinson about the fall and showed Dickinson the patch of ice covered with oil on which he had slipped. Plaintiff further testified that after the fall, his shoe, pants, and clothes were spotted with oil.

Defendant Dickinson testified that he could not remember if he had any conversation with Blake while Blake was lying on the ground immediately after the fall. Dickinson further testified that the next time he saw Blake was after the latter had gotten out of the hospital at which time Blake stated that he did not know why he had fallen. Blake denied such a conversation with Dickinson ever took place. Dickinson further testified that neither he nor any of his employees ever inspected the premises on February 10, 1968, after the occurrence.

At the time plaintiff fell, three attendants were on duty at the gas station. All three attendants testified that immediately after the fall they walked over to where plaintiff was lying and noticed nothing unusual about the area. They noticed no ice or snow on the ground. One of these attendants further testified that Blake, while lying on the ground, told him "I had a bum leg that gave away on me." Although Blake did not testify to having had the above conversation with the attendant, he did testify to prior injuries to both knees. Plaintiff sustained a slight injury to his left knee in 1959 and injuries to his right knee in 1959, 1963 and 1964.

As to the liability of defendant Clark, a lease and Retailer Dealer Consignment Agreement in effect at the time of the occurrence were received into evidence. John Commack, district agent for Clark, testified that he would make periodic inspections to oversee compliance of Dickinson's obligations under the lease and that the safety of the premises lies solely with the lessee. Commack further testified that Clark had several short television commercials advertising Clark's product as the very best. These commercials did not advertise the price of the product. Blake testified that he had heard advertisements about Clark's having good, cheap gasoline and had been using it ever since hearing these advertisements.

■■ Plaintiff first contends that there was sufficient evidence to sup-

port the jury's finding of negligence on the part of defendant Dickinson and that the trial court thus erred in entering judgment *n.o.v.* in favor of said defendant. The standard to be used in determining when a judgment *n.o.v.* has been properly entered is clearly stated as follows in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504, 513—14:

> "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

It is with this standard in mind that we review plaintiff's first contention.

In the case at bar, five witnesses, plaintiff Blake, defendant Dickinson, and three gas station attendants on duty at the time of the accident testified concerning the circumstances surrounding plaintiff's fall. None of these witnesses can be classified as disinterested. Further, plaintiff's testimony concerning the cause of his fall conflicts significantly with the testimony of defendant and his three employees. In this regard, the situation in the instant case is similar to that in *Watson v. Chicago Transit Authority* (1973), 12 Ill.App.3d 684, 299 N.E.2d 58. In *Watson*, this court made the following observation:

> "Since the evidence was conflicting and substantial factual questions were in dispute, and since different inferences could be drawn from those facts, the determination of the truth depended upon the jury's evaluation of the credibility of the witnesses. (*Winston v. Chicago Transit Authority* (1971), 2 Ill.App.3d 151, 276 N.E.2d 65.) It is the jurors who are the sole judges of such credibility and the weight to be accorded the testimony. (*Moore v. Checker Taxi Co.* (1971), 133 Ill.App.2d 588, 273 N.E.2d 514.) That the defendants produced the greater number of witnesses did not make their version of the accident the one the jury had to accept." (12 Ill.App.3d 684, 692—3, 299 N.E.2d 58, 64.)

Similarly, in the case at bar, the evidence was conflicting and substantial factual questions were in dispute. Futhermore, there was no disinterested witness that testified as to the cause of plaintiff's fall. Considering all of the conflicting evidence presented at trial, we conclude that the issue of what caused the plaintiff's fall properly went to the jury.

■■ In support of the judgment *n.o.v.*, defendants cite cases in which, due to plaintiffs' contributory negligence, courts have ruled in favor of defendants in fact situations similar to that in the case at bar. (See *Walberg v. Rocolene Refining Co.* (1940), 340 Pa. 200, 16 A.2d 390, and *Phillips v. Shell Oil Co.* (1973), 13 Ill.App.3d 512, 300 N.E.2d 771.) In

the case at bar, defendants point to no place in the record which indicates that plaintiff was contributorily negligent as a matter of law. Plaintiff described the patch of ice covered with oil upon which he slipped as being the same color as the ground. The jury could reasonably have believed that plaintiff could not have seen the ice covered with oil. The jury was properly instructed concerning contributory negligence and we conclude that this issue was properly one for the jury.

In further support of the judgment *n.o.v.* defendants cite other cases in which, due to the lack of evidence of a proprietor's negligence in discovering or removing the substance which caused the accident, courts have ruled against plaintiff-invitee. See *DeMario v. Sears Roebuck & Co.* (1972), 6 Ill.App.3d 46, 284 N.E.2d 330; *Kittrell v. Alabama Power Co.* (1953), 258 Ala. 381, 63 So.2d 363.

■■ The rules of law relevant to the lack of such evidence are clearly set forth as follows in *Donoho v. O'Connell's, Inc.* (1958), 13 Ill.2d 113, 118, 148 N.E.2d 434, 437—8:

> "* * * [t]hat a proprietor owes a business invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition (*Geraghty v. Burr Oak Lanes, Inc.*, 5 Ill.2d 153); and that liability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if it was placed there by the negligence of the proprietor or his servants, or, if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. (*Davis v. South Side Elevated Railroad Co.*, 292 Ill. 378.) Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive (*Pabst v. Hillmans*, 293 Ill.App. 547); whereas, if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor. *Schmelzel v. Kroger Grocery and Baking Co.*, 342 Ill.App. 501."

In the case at bar, the oil upon which plaintiff testified that he fell was mixed with ice. The evidence presented at trial showed that it was freezing on the day of plaintiff's fall and for several days prior thereto. Furthermore, it had not snowed on the date of plaintiff's fall. From this evidence the jury could reasonably have believed that the oil was on defendants' premises a sufficient length of time so that the defendants in

the exercise of ordinary care should have discovered it. This issue was properly one for the jury.

Considering all of the evidence presented in the trial court, we feel that the issue of defendant Dickinson's liability was properly one for the jury to decide. Under the standard in *Pedrick*, we cannot say that all of the evidence when viewed in the light most favorable to plaintiff, so overwhelmingly favored defendant Dickinson that no contrary verdict based on that evidence could ever stand. Accordingly, under the standard in *Pedrick*, we reverse the trial court's ruling granting judgment *n.o.v.* in favor of defendant Dickinson and direct the trial court to reinstate the $15,000 jury verdict in favor of plaintiff.

■■■ Plaintiff next contends that the jury verdict in favor of defendant-lessor, Clark, is against the manifest weight of the evidence and should be reversed. We disagree. As stated in *Hulke v. International Manufacturing Co.* (1957) 14 Ill.App.2d 5, 32—33, 142 N.E.2d 717, 732:

> "The law is clear that generally a master is liable for the acts of his servant and that a principal is liable for the acts of his agent, but that generally neither is liable for the acts of an independent contractor. * * * Unless the relationship is so clear as to be undisputed, the relationship between principal and agent is a question of fact for the jury to determine from all the evidence."

(See also *Yuhas v. Allis-Chalmers Distribution Service Corp.* (1973), 12 Ill.App.3d 814, 299 N.E.2d 166; *Allstate Insurance Co. v. Gleason* (1964), 50 Ill.App.2d 207, 200 N.E.2d 383; *Tansey v. Robinson* (1960), 24 Ill. App.2d 227, 164 N.E.2d 272.) Even the case upon which plaintiff most heavily relies, *Gizzi v. Texaco, Inc.* (3d Cir. 1971), 437 F.2d 308, does not question the above proposition. In *Gizzi*, the lower court granted defendant's motion for a directed verdict. On appeal, the court reversed and remanded saying, "[q]uestions of apparent authority are questions of fact and are therefore for the jury to determine." (*Gizzi*, 437 F.2d 308, 310.) In the case at bar, the lease and Retailer Dealer Consignment Agreement between Dickinson and Clark, the testimony of Blake and that of John Commack are relevant to a determination of the relationship between Clark and Dickinson. There is nothing in said agreements or said testimony which establishes a relationship so clear as to be undisputed. In fact, Clark's district manager, John Commack, testified that the safety of the premises lies solely with the lessee. Under these circumstances, the issue of Clark's liability was properly one for the jury and we do not find that the jury verdict in favor of Clark is against the manifest weight of the evidence.

For the reasons above stated, we reverse the trial court's ruling granting judgment *n.o.v.* in favor of defendant Dickinson and direct the trial

court to reinstate the $15,000 verdict in favor of plaintiff. We further find that the jury verdict in favor of Clark is not against the manifest weight of the evidence and consequently affirm the ruling of the trial court denying plaintiff's post-trial motion asking for judgment *n.o.v.* against Clark or in the alternative for a new trial.

Judgment reversed in part, affirmed in part and remanded with directions.

McNAMARA and MEJDA, JJ., concur.